IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RONALD LEE MABINE,

Petitioner,

v.  Criminal No. 2:14cr113
Civil No. 2:16cv262

UNITED STATES of AMERICA,

Respondent.

## OPINION & ORDER

This matter is before the Court on pro se Petitioner Ronald Lee Mabine's ("Petitioner's") Motion to Vacate under 28 U.S.C. § 2255 ("Motion"). Doc. 81. Petitioner filed the Motion on June 2, 2016. Id. Petitioner alleges ineffective assistance of both trial and appellate counsel, and also argues that his conviction on Count Two should be set aside because Hobbs Act robbery does not qualify as a "crime of violence" under 18 U.S.C. § 924(c) ("924(c)"). Petitioner requests that counsel be appointed to assist him in this matter. On June 20, 2016, this Court ordered the Government to respond to the Motion, Doc. 82, which the Government did on August 19, 2016, Doc. 83. Petitioner replied on November 10, 2016. Doc. 86.

Petitioner makes several distinct claims of ineffective assistance of counsel. Petitioner argues that his trial counsel was ineffective for the following reasons: (1) coercing Petitioner into signing stipulations at trial; (2) failure to present certain evidence and witnesses at trial, including Petitioner himself; (3) failure to investigate and raise a claim of possible witness tampering; and (4) failure to adequately challenge and move to suppress all of the evidence presented by the Government in this case. Petitioner also brings a claim regarding the alleged

1

ineffective assistance of his appellate counsel.

For the reasons stated herein, the Court **DENIES** Petitioner's Motion, Doc. 81, **IN PART** and **RESERVES RULING** on the remainder. The Court **DISMISSES** Petitioner's claim of ineffective assistance of appellate counsel. The Court **DISMISSES** Petitioner's claim of ineffective assistance of trial counsel, as to the decisions (1) to sign the stipulations and (2) not to present any evidence at trial. The Court **DISMISSES** Petitioner's claim that his Hobbs Act robbery conviction does not qualify as a crime of violence under 924(c). The Court **RESERVES RULING** on Petitioner's claim of ineffective assistance of trial counsel, as to trial counsel's (3) failure to investigate and raise a claim of witness tampering and (4) failure to adequately challenge evidence offered by the Government. In order to assist the Court in its resolution of the remainder of Petitioner's Motion, the Court **ORDERS** trial counsel, attorney Larry M. Dash, to file an affidavit responding to these remaining ineffective assistance claims. Mr. Dash need not respond to the claims that have been dismissed in this Order, but shall explain his decisions not to raise a claim of witness tampering and not to move to suppress the evidence offered by the Government.

## I. BACKGROUND

The following facts were established at trial. On April 24, 2014, Petitioner applied for a loan with Allied Cash Advance, located in Norfolk, Virginia. Tr. 70. Petitioner's application was denied. Tr. 74. On April 29, 2014, the same Allied Cash Advance was robbed. Tr. 77. The employee on duty that day, Jessica Robertson, testified that a man entered the store sometime after 1:00 p.m., pointed a gun at her, and demanded that Ms. Robertson give him all the money that was in the register. Tr. 77–78. Ms. Robertson testified that the robber was a short, African-American male who was wearing grey sweatpants, a black sweatshirt, black-rimmed glasses with

2

thick lenses and a square frame, and something covering the bottom half of his face. Tr. 79, 90. At one point, the robber cocked the gun and pointed it at Ms. Robertson, allowing the piece of cloth covering his face to fall so that Ms. Robertson could see his entire face. Tr. 80. The robber took all of the money in the cash register, amounting to four (4) $100 bills, four (4) $5 bills, and nine (9) $1 bills, a total of $429. See Tr. 87. The robber then instructed Ms. Robertson to lock herself in the store bathroom. Tr. 86. Ms. Robertson subsequently called the police.

Around 1:50 p.m., Norfolk Police Lieutenant Alex McConnaghy located Petitioner in a dumpster behind the Allied Cash Advance store. Tr. 120–21. Also found in the dumpster were a pair of grey sweatpants, a black shirt, a blue scarf or head cover, a black hooded sweatshirt, and a fully loaded silver Raven Arms .25 semi-automatic pistol. Tr. 120, 169. Norfolk Police Officer Cody Morgan removed Petitioner from the dumpster and patted him down, finding four (4) $100 bills in Petitioner's left pocket. Id. Ms. Robertson later identified Petitioner as the man who robbed the Allied Cash Advance. Tr. 91–93.

On August 6, 2014, a three (3) count Criminal Indictment was filed in open court against Petitioner. Doc. 1. The Indictment charged Petitioner with:

**Count One:** Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a);
**Count Two:** Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and
**Count Three:** Felon in Possession of Firearm, in violation of 18 U.S.C. §§ 922(g), 924(a)(2), and 924(c).

Id. On October 29, 2014, a jury found Petitioner guilty of all three (3) counts. See Docs. 30, 34. On January 29, 2015, Petitioner filed a Motion alleging ineffective assistance of counsel, specifically, his trial counsel Larry M. Dash. Doc. 42. On February 20, 2015, Petitioner filed a Motion for Judgment of Acquittal. Doc. 44. On March 17, 2015, the Court DENIED Petitioner's Motion for Judgment of Acquittal, and sentenced Petitioner to a term of

imprisonment of three hundred eighty-four (384) months and fifteen (15) years of supervised release. Doc. 49. The term of imprisonment consists of one hundred twenty (120) months on Count One, eighty-four (84) months on Count Two, and one hundred eighty (180) months on Count Three, all to be served consecutively. See id. at 2.

On April 1, 2015, Petitioner appealed the Court's final judgment entered March 18, 2015. Doc. 54. On October 26, 2015, the Court of Appeals affirmed this Court's judgment. Doc. 70. On November 2, 2015, this Court entered a Notice and Order advising Petitioner that the Court would construe his Motion regarding his ineffective assistance of counsel claim as a § 2255 Motion unless Petitioner responded in thirty (30) days. Doc. 71. On November 17, 2015, the judgment of the Court of Appeals affirming this Court's judgment took effect. Doc. 74.

The Court entered a second Notice and Order on December 29, 2015, again advising Petitioner of the Court's intent to construe his ineffective assistance claim as a § 2255 Motion. Doc. 77. On January 7, 2016, the Court received a letter from Petitioner asking to withdraw his Motion, Doc. 78, and on January 8, 2016, the Court ordered that the Motion be withdrawn, Doc. 79.

Petitioner filed the instant Motion on June 2, 2016. Doc. 81. On June 20, 2016, the Court ordered the Government to respond to the Motion within sixty (60) days. Doc. 82. On August 19, 2016, the Government responded in opposition to Petitioner's Motion. Doc. 83. On November 10, 2016, Petitioner replied in further support of his Motion. Doc. 86.

## II. LEGAL STANDARDS

### A. Section 2255

Section 2255 is designed to correct fundamental constitutional or jurisdictional errors, which would otherwise "'inherently result[] in a complete miscarriage of justice.'" United States

v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). In order to move the Court to vacate, set aside or correct a sentence under § 2255, a petitioner must prove that one of the following occurred: (1) that his "sentence was imposed in violation of the Constitution or laws of the United States;" (2) that the Court was without jurisdiction to impose such a sentence; (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner bears the burden of proving his grounds for collateral review of his sentence by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958); Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

The scope of a § 2255 collateral attack is far more limited than an appeal, and thus a "collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Id. at 167. Although the doctrine of procedural default generally bars claims not previously raised, a freestanding claim of ineffective assistance of counsel may be properly asserted for the first time in a § 2255 petition. United States v. DeFusco, 949 F.2d 114, 120 (4th Cir. 1991). Generally, an evidentiary hearing is required under 28 U.S.C. § 2255 unless it is clear from the pleadings, files, and records that a movant is not entitled to relief. United States v. Witherspoon, 231 F.3d 923, 925–26 (4th Cir. 2000); see also 28 U.S.C. § 2255(b).

A prisoner must file a § 2255 motion within a one (1) year period of limitation, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by

governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

B.  **Ineffective Assistance of Counsel**

The Sixth Amendment of the Constitution safeguards a defendant's right to "have the assistance of counsel for his defense." U.S. Const. amend. VI. This right exists to "ensure that criminal defendants receive a fair trial." Strickland v. Washington, 466 U.S. 668, 689 (1984). To establish a claim for ineffective assistance of counsel, a defendant must satisfy a two-prong test. Id. at 668–88. "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." Id. at 687. The burden of proving both prongs of Strickland, performance and prejudice, rests on the defendant. Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). Defendant's claim will be denied if he fails to carry his burden on either prong. Id.

*1. Performance Prong*

The performance prong of Strickland requires Petitioner to "show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. Petitioner's counsel are entitled to a "strong presumption" that their strategy and tactics fell "within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004). The objectiveness of counsel's assistance is based on counsel's perspective at the time of the alleged error and in light of all the circumstances, under a "highly deferential" standard. Roane, 378 F.3d at 404–05 (quoting Kimmelman v. Morrison, 477 U.S.

365, 381 (1986)).

*2. Prejudice Prong*

The second prong of the Strickland test requires that Petitioner demonstrate prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694; see also Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000). Petitioner must show a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Roane, 378 F.3d at 405.

C. **Johnson v. United States**

Under the Armed Career Criminal Act ("ACCA"), a defendant convicted of being a felon in possession of a firearm is subject to a longer sentence if he has three (3) or more previous convictions for a "violent felony." See 18 U.S.C. § 924(e)(1). "Violent felony" was defined in the Act to include "any crime punishable by imprisonment for a term exceeding one year [that] (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another</u>." Id. § 924(e)(2) (emphasis added). On June 26, 2015, the Supreme Court in Johnson v. United States, 135 S. Ct. 2551 (2015), held that the underlined text, the "residual clause" of the ACCA, was unconstitutionally vague. Id. at 2557. On April 18, 2016, the Supreme Court in Welch v. United States made Johnson retroactive. 136 S. Ct. 1257, 1268 (2016).

### III. ANALYSIS

The judgment in this case became final on November 17, 2015. See Doc. 74. Petitioner filed the instant Motion on June 2, 2016, less than one year after entry of the final judgment. See Doc. 81. Thus, Petitioner's Motion is timely. See 28 U.S.C. § 2255(f)(1). In the Motion,

7

Petitioner challenges his conviction on the grounds that he received ineffective assistance of trial and appellate counsel. Petitioner further argues that Count Two was improperly charged because (1) Hobbs Act robbery does not qualify as a "crime of violence" as that term is defined in the force clause of 924(c), and (2) the residual clause is unconstitutionally vague per Johnson, 136 S. Ct. 1257.

A.   **Ineffective Assistance of Counsel**

In the Motion, Petitioner claims that he received ineffective assistance of both trial and appellate counsel. See Doc. 81. Petitioner argues that the assistance of his trial counsel, Larry Dash, was ineffective for a number of reasons. Dash allegedly "coerced" him into signing two (2) stipulations: one stipulating that the firearm found in the dumpster with Petitioner had traveled in and affected interstate commerce, and the other stipulating that Petitioner was previously convicted of a qualifying felony. Id. at 6; see Docs. 31, 32. Dash allegedly "refused to investigate and interview" James Parker, whom Petitioner wished to call as a witness in his defense, and also refused to "permit [Petitioner] to take the stand." Id. Dash allegedly turned down Petitioner's request that he "investigate the conduct of investigator Fedorko concerning witness coaching in the hallway outside the courtroom." Id. at 7. Dash did not challenge the sufficiency of the Government's evidence to the satisfaction of Petitioner. Id. (citing Dash's failure to investigate "the transcripts from the state proceedings," "documents concerning Jessica Robertson and the Norfolk Pol[i]ce Department that were crucial to [Petitioner's] defense," and "material evidence demonstrating where [Petitioner] had obtained the money that was on his person"). Dash did not move to suppress all of the evidence as Petitioner believes he should have. Id. at 8. Finally, Dash "failed" to have a tape recording of Ms. Robertson "analyzed to establish that it had been tampered with." Id.

Petitioner also argues that attorney Patrick Bryant failed to present key issues on appeal. First, Petitioner alleges that Bryant "specifically informed [Petitioner] that he was unable to confront Dash's conduct under the guise of ineffective assistance because they were in the same law office." Id. at 9. Petitioner further alleges that he "specifically instructed Bryant to raise his claim under the then recent Supreme Court decision Johnson," yet "Bryant informed [Petitioner] that Johnson did not apply to his circumstances and therefore he would not present it to the Court of Appeals." Id. (emphasis omitted).

### 1. *Stipulations*

The Government opposes Petitioner's claim that the stipulations as to his prior felony conviction and the interstate commerce element of the firearm charge constitute ineffective assistance of counsel. See Doc. 83 at 12–13. The Government asserts that Defendant fails to "allege any prejudice stemming from the stipulations, nor does he demonstrate how the outcome of the trial would have differed in the absence of any stipulation." Id. at 13. The Government argues that the stipulation as to Petitioner's prior felony conviction may even have "benefitted" Petitioner, as it avoided the entry of likely more prejudicial evidence of this conviction at trial. Id.

In reply to this argument, Petitioner argues that the facts stipulated to would not necessarily have been successfully proved by the Government. Petitioner asserts that if he had not signed the stipulation as to his prior conviction, defense counsel could have challenged the admissibility of his prior conviction into evidence under Federal Rule of Evidence 404(b). Doc. 86 at 2. Petitioner also argues that, absent a stipulation, a conviction under 18 U.S.C. § 922(g) (Count Three in this case) requires a jury verdict finding that the firearm in question traveled in interstate commerce. Id. (citing Torres v. Lynch, 136 S. Ct. 1619 (2016)).

Petitioner has failed to allege any facts to suggest that these stipulations were objectively unreasonable, or that they actually prejudiced him. As the Fourth Circuit has held, "[i]t is not objectively unreasonable for counsel to stipulate to a fact that the government can prove." Morva v. Zook, 821 F.3d 517, 533 (4th Cir. 2016) (citing United States v. Toms, 396 F.3d 427, 433-34 (D.C. Cir. 2005)); see also United States v. Beard, 475 F. Appx. 665, 668 (9th Cir. 2012) ("[I]t is common trial strategy to prevent the jury from hearing evidence of additional convictions." (citing Old Chief v. United States, 519 U.S. 172 (1997))). Moreover, Petitioner's argument that evidence of his prior felony conviction could have been found inadmissible as unduly prejudicial is idealistic at best, given that said conviction was a core element of Count Three and thus highly probative. The Court **FINDS** that Petitioner's trial counsel did not act unreasonably in stipulating to these facts.

### 2. *Failure to Present Evidence and Challenge Government's Evidence*

Petitioner's remaining claims against trial counsel largely attack Mr. Dash's decision not to pursue certain lines of defense. Petitioner argues that the Sixth Amendment required Mr. Dash (1) to call James Parker as a witness, (2) to allow Petitioner to take the stand, (3) to raise a claim of witness tampering before the Court, (4) to analyze a tape recording of Ms. Robertson for evidence of tampering, (5) to move to suppress all evidence introduced by the Government, and (6) to investigate and introduce various pieces of evidence that Petitioner argues were necessary for his defense.

#### a. **Failure to Present Evidence**

Items (1), (2), (4), and (6) above all relate to Defendant's decision not to present any evidence in his defense at trial. Regarding this decision, Defendant told the Court at trial, under oath, that he made the informed decision not to present any evidence at all:

| | |
|---|---|
| Court: | Mr. Mabine, has your attorney advised you that you have the right to testify, if you wish to do so? |
| Petitioner: | Yes, he did. |
| Court: | And has he also advised you that you have the right not to testify, if that is your choice? |
| Petitioner: | Yes, he did. |
| Court: | Do you understand that if you choose not to testify that the Court will instruct the jury that they may not consider the fact that you chose not to testify in determining your guilt or innocence of the charges? |
| Petitioner: | Yes, Your Honor. |
| Court: | And has your attorney also advised you that you have the right to choose not to present any evidence, if you wish to do so? |
| Petitioner: | Yes, Your Honor. |
| Court: | And has he also advised you that you do have the right to produce evidence, if you choose to do so? |
| Petitioner: | Yes, Your Honor. |
| Court: | Have you advised your attorney that you do not wish to present any evidence? Have you discussed with your attorney the presentation of evidence? |
| Petitioner: | Yes. |
| Court: | And has it been your decision, after consulting with your attorney, not to present any evidence? |
| Petitioner: | Yes. |
| Court: | And have you discussed your option of testifying or not testifying with your attorney? |
| Petitioner: | Yes, Your Honor. |
| Court: | And based on that discussion, have you chosen not to testify? |
| Petitioner: | I've chosen not to testify. |

Tr. 230-31.

These sworn statements offered by Petitioner at his trial are akin to those made by a defendant during a Rule 11 plea colloquy. The Supreme Court has held that such "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The Fourth Circuit has held that, "[a]bsent clear and convincing evidence to the contrary," a defendant will be bound by his statement under oath in a plea colloquy that he is satisfied with his attorney. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992). The evidence necessary to overcome the presumption of verity is a showing that such statements were made involuntarily, "on account of 'misunderstanding, duress, or misrepresentation by

11

others.'" Hartman v. Blankenship, 825 F.2d 26, 29 (4th Cir. 1987).

At trial, Petitioner stated under oath that he made an informed decision not to testify and not to present any evidence, after discussing such options with his attorney. See Tr. 230–31. In his Motion, Petitioner does not allege that he made such decisions under duress, or due to a misunderstanding or misrepresentation. Instead, he alleges that his trial counsel "simply told [Petitioner] that he could not take the stand." Doc. 81 at 6. The Court **FINDS** that this contention is, "in the face of the record[,] wholly incredible," given Petitioner's sworn statements to the contrary. See Blackledge, 431 U.S. at 74. Accordingly, the Court **DISMISSES** Plaintiff's ineffective assistance of trial counsel claim as to these decisions.

### b. Failure to Challenge Government's Evidence

Items (3) and (5) above accuse trial counsel of failing to adequately challenge the evidence submitted by the Government at trial. The Government notes the lack of evidentiary support for Petitioner's failure-to-investigate claims, observing that "at both the suppression hearing and during trial, Mr. Dash vigorously cross-examined both Detective Fedorko and the victim using the victim's initial statement to the police and her transcribed testimony from the state court preliminary hearing." Doc. 83 at 15; compare Doc. 81 at 7 ("There was no investigation into the transcripts from the state proceedings that would have called the government's case into question. Dash made no attempt to investigate and present documents concerning Jessica Robertson and the Norfo[l]k Pol[i]ce Department that were crucial to [Petitioner's] defense."). Even if trial counsel had not performed such a vigorous cross examination of the Government's witness, the Government argues, Petitioner's complaints "fail[] to demonstrate prejudice," because "there was an overwhelming amount of evidence presented at trial to support convictions on each of the three counts in the indictment." Doc. 83 at 15.

Petitioner vaguely asserts that his trial counsel "cherry-picked the material that he thought might be supressed [sic], leaving the rest of the evidence in the hands of the United States," Doc. 81 at 8, without providing specific examples. His most concrete complaint in this regard is Mr. Dash's failure to raise a claim of witness tampering. Petitioner believes that Ms. Robertson "was having trouble with testimony," and that when Detective Fedorko was seen speaking with her he "was assisting the witness with what to say." Doc. 86 at 6. As support for this assertion, Petitioner claims that "[a] review of the witness testimony will show that it was not clear, and this particular witness was key to the Government's case in chief." Id.

The Fourth Circuit has held that it is not objectively unreasonable to decline to raise possible misconduct of government witnesses before the Court, where there is no "concrete evidence" to substantiate the claim. See United States v. Dyess, 730 F.3d 354, 362 (4th Cir. 2013) ("Although counsel should conduct a reasonable investigation into potential defenses, Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." (quoting Green v. French, 143 F.3d 865, 892 (4th Cir. 1998))). And an ineffective assistance claim based on counsel's failure to file a motion to suppress will only survive if the unfiled motion "would have had 'some substance.'" Grueninger v. Director, Va. Dep't of Corrections, 813 F.3d 517, 525 (4th Cir. 2016) (quoting Tice v. Johnson, 647 F.3d 87, 104 (4th Cir. 2011)); see also id. ("[T]he prejudice prong in such cases has two distinct components, with the petitioner required to show both (1) that the motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of his trial.").

In briefing this Motion, Petitioner has failed to allege specifics about how exactly the witness tampering claim he would have had Mr. Dash bring, and the motions to suppress he

13

would have had Mr. Dash file, would impact the outcome of his trial. However, the Government likewise has failed to sufficiently support its contention that each of Mr. Dash's decisions in this respect was objectively reasonable.[1] While the Court will generally defer to defense counsel's decision on strategic matters, it must have some explanation from defense counsel as to how these decisions were made. Accordingly, the Court **RESERVES RULING** on the subject of the complaints enumerated in this subsection III.A.2.b, and **ORDERS** defense counsel Larry M. Dash to file an affidavit responding to these complaints. Specifically, Mr. Dash shall explain his decisions not to raise a claim of witness tampering and not to file motions to suppress all of the evidence offered by the Government.

### 3. *Ineffective Assistance on Appeal*

Petitioner first argues that his appellate counsel, Patrick L. Bryant, was ineffective because he failed to raise an ineffective assistance of counsel claim regarding Mr. Dash's performance as trial counsel. See Doc. 81 at 8–9. "The rule in this circuit is that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance." United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992) (citing United States v. Percy, 765 F.2d 1199, 1205 (4th Cir. 1985)). As discussed in subsections III.A.1 and III.A.2 above, the record in this case does not conclusively show ineffective assistance of trial counsel. Accordingly, it was not appropriate for Mr. Bryant to raise such a claim on appeal, and Petitioner's argument that his failure to do so rises to the level of ineffective assistance of appellate counsel must fail.

Petitioner also argues that Mr. Bryant provided ineffective assistance by failing to argue for application of the recent Johnson decision to Petitioner's case. See Doc. 81 at 9. The

---

[1] This failure is unsurprising, given that defense counsel generally will not consult opposing counsel regarding trial strategy and decisions made in light of that strategy.

14

Supreme Court has held that "[d]eclining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." Davila v. Davis, 137 S. Ct. 2058, 2067 (2017) (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)). In this case, Mr. Bryant argued on appeal that this Court "erroneously denied [Petitioner's] motion to suppress identification evidence" and that the evidence presented at trial was insufficient to support his conviction. A claim that Johnson should extend to the residual clause of 924(c) and that this extension would invalidate Petitioner's conviction—when the Johnson decision had not yet been made retroactive, and where Petitioner was actually convicted under the force clause of 924(c)—is not "plainly stronger" than the arguments Mr. Bryant actually presented on appeal. Accordingly, the Court **DENIES** Petitioner's ineffective assistance claim as to his appellate counsel Patrick L. Bryant.

## B.  Hobbs Act Robbery and 924(c)

In Count One of the Indictment, Petitioner was charged with and ultimately convicted of violating 18 U.S.C. § 1951(a), otherwise known as "Hobbs Act robbery." See Doc. 1. In Count Two, Petitioner was charged with and ultimately convicted of violating 18 U.S.C. § 924(c)(1)(A)(ii), which establishes an additional seven (7) year prison sentence for defendants who brandish a firearm during the commission of "any crime of violence." "Crime of violence" is defined as "an offense that is a felony and (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). Subsection (A) is generally referred to as the "force clause," while subsection (B) is called the "residual clause." Petitioner argues that his conviction on Count One for Hobbs Act Robbery does not meet the

definition of a crime of violence under the force clause of 924(c), and that the residual clause of 924(c) is unconstitutionally vague because of the Supreme Court's decision in Johnson, 135 S. Ct. 2551.

Petitioner cites to United States v. Edmundson, 153 F. Supp. 3d 857 (D. Md. 2015), and United States v. Lattanaphom, 159 F. Supp. 3d 1157 (E.D. Cal. 2016), asserting that the district courts in those cases "determined that § 1951 was not a crime of violence for purposes of § 924(c), because the Hobbs Act fell to the residual clause," and the residual clause was unconstitutionally vague under Johnson. Petitioner glosses a major distinction between the instant case and these two cases, both of which actually involved Hobbs Act conspiracy charges as opposed to an actual robbery. In Edmundson, for instance, the Court stated that it could find no "authority that Hobbs Act Conspiracy (as opposed to robbery under the Hobbs Act) constitutes a crime of violence under the § 924(c) force clause, which is unsurprising considering the fact that . . . it is undisputed that Hobbs Act Conspiracy can be committed even without the use, attempted use, or threatened use of physical force against the person or property of another." 153 F. Supp. 3d at 859 (emphasis added).

To the contrary, there is a significant amount of authority that Hobbs Act robbery constitutes a crime of violence under the force clause of 924(c), including from this Court. See Doc. 83 at 17–18 (citing United States v. Hill, 832 F.3d 135 (2d Cir. 2016); In re Fleur, 824 F.3d 1337 (11th Cir. 2016)); see also United States v. Garcia, 2017 WL 2262839 (E.D. Va. May 23, 2017); United States v. Gale, 2017 WL 3037796 (E.D. Va. July 18, 2017). In Garcia, this Court analogized the elements of Hobbs Act robbery to those of federal bank robbery under 18 U.S.C. § 2113, which the Fourth Circuit has held satisfies the force clause of 924(c). See Garcia, 2017 WL 2262839, at *1 (citing United States v. McNeil, 818 F.3d 141, 153 (4th Cir. 2016)). The

Government also notes that the use of Hobbs Act robbery as a predicate for 924(c) convictions "has been deemed so straightforward that it has drawn no controversy—or even comment—in recent Supreme Court litigation." Doc. 83 at 19 (citing Taylor v. United States, 136 S. Ct. 2074, 2078 (2016) ("Taylor was convicted of two counts of Hobbs act robbery, in violation of § 1951(a), and one count of using a firearm in furtherance of a crime of violence, in violation of § 924(c)."); Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013) (reporting similar charges)).

Petitioner argues that a defendant could commit a hypothetical Hobbs Act robbery in such a way that "does not require the threat of violent physical force," and thus that Hobbs Act robbery does not qualify as a crime of violence under 924(c). Doc. 86 at 10 (emphasis omitted). This argument rests on the Court's obligation to apply a "categorical approach" in determining whether an offense constitutes a crime of violence under 924(c), in which the Court considers only the elements of the offense and not the actual facts of the case before it. See McNeal, 818 F.3d at 152. This argument cannot prevail. The most basic premise of Petitioner's enhanced punishment under 924(c) is the <u>brandishing of a firearm</u> in furtherance of his Hobbs Act robbery offense. Brandishing a firearm during the course of a robbery necessarily involves at minimum the threat of violent physical force to the robbery victim. There is no imaginable situation in which a defendant may be charged under 924(c) with brandishing a firearm in furtherance of a Hobbs Act robbery, where that Hobbs Act robbery offense did not involve the actual or threatened use of physical force.[2]

For these reasons, the Court **FINDS** that Petitioner's conviction under § 1951 for Hobbs

---

[2] Cf. In re Irby, 858 F.3d 231, 234 (4th Cir. 2017) ("We briefly note the categorical approach is a particularly bad fit in § 924(c) cases because § 924(c) is a firearms enhancement provision that penalizes, in broad terms, the use of a firearm during violent crimes. While Irby posits multiple hypotheticals on how a person can commit second-degree retaliatory murder without using direct force, '[o]ne is left to ask when, if ever, would someone be facing a firearms enhancement . . . by pointing a laser at an airplane' or convincing a child to jump out of a second-story window." (quoting United States v. Checora, 155 F. Supp. 3d 1192, 1200 (D. Utah 2015))).

17

Act robbery satisfies the force clause of 924(c). Accordingly, the Court **DENIES** Petitioner's Motion as to this claim, and declines to reach the question of whether Johnson invalidated the residual clause of 924(c).

## CONCLUSION

For the reasons stated above, the Court **DENIES** Petitioner's Motion, Doc. 81, **IN PART**. The Court **DISMISSES** Petitioner's ineffective assistance of appellate counsel claim and his claim that his 924(c) conviction fails. The Court also **DISMISSES** Petitioner's ineffective assistance of trial counsel claim, as to trial counsel's decisions to file stipulations and not to present any evidence. The Court **RESERVES RULING** on the remainder of Petitioner's ineffective assistance of trial counsel claim, as detailed in subsection III.A.2.b above. The Court **ORDERS** attorney Larry M. Dash to file an affidavit responding to these remaining ineffective assistance claims. Specifically, Mr. Dash shall explain his decisions not to bring a witness tampering claim and not to move to suppress all of the Government's evidence. Mr. Dash shall file his affidavit within thirty (30) days of the entry of this Order.

Petitioner is **ADVISED** that he may appeal this Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice of appeal must be received by the Clerk within sixty (60) days from the date of this Order. To proceed in forma pauperis on appeal, Petitioner must submit an application to proceed in forma pauperis to the Clerk, United States Court of Appeals for the Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **REQUESTED** to send a copy of this Order to Petitioner, to attorney Larry M. Dash, and to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

December 11, 2017